

**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

ANDREW M. CUOMO
Attorney General

STATE COUNSEL DIVISION
Litigation Bureau

Writer Direct:  (518) 474-6800

August 27, 2010

**First-Class Mail**

Hon. David R. Homer
United States Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, NY 12207

      Re.    <u>Wagner v. County of Schenectady et al.</u>, 09-cv-00652 (GLS) (DRH)

Dear Judge Homer:

      On behalf of defendants Harry J. Corbitt, David J. Swarts, William Sprague, Daniel Larkin and James Halverson, I respectfully request a conference with Your Honor pursuant to Local Rule 7.1(b)(2) to address a troubling turn of events relating to discovery in the above-referenced action.

      The Defendants completed the depositions of the Plaintiffs on July 23 and July 27, 2010. Before appearing for deposition, none of the Plaintiffs had verified their interrogatory responses, as required by Fed. R. Civ. P. 33(b)(1). Plaintiffs Ingersol, Fenwick, and Wagner ultimately signed their interrogatories at the outset of their respective depositions. *See, e.g.*, Deposition of Kenneth Fenwick, July 23, 2010 ("Fenwick Dep."), 43:8-44:4; Deposition of Michael Wagner, July 27, 2010 ("Wagner Dep."), 50:15-51:6. Each of those Plaintiffs then proceeded to testify that he was unable to attest to the truth of his interrogatory responses because those responses contained information provided by his attorneys that was not within the scope of his personal knowledge. *See* Fenwick Dep, 49:22-55:2; Wagner Dep., 51:7-66:5; Deposition of Levi Ingersol, July 23, 2010 ("Ingersol Dep."), 48:22-52:17.

      Plaintiff Fenwick, for example, in one of his interrogatory responses, made references to (1) the New York State Police ("NYSP") Guidelines for the Enforcement of Motorcycle Checkpoints, and (2) a Powerpoint presentation prepared by Defendant Halverson. Fenwick Response to Interrogatories 7, 8, 9, 10. Mr. Fenwick testified, however, that he had never seen either the NYSP Guidelines or the Powerpoint presentation. He then conceded that he could not whether his interrogatory responses were true or false. Fenwick Dep., 51:22-55:5. With respect to one interrogatory, Mr. Fenwick flatly denied that the response was his, and claimed not to remember how it had come to be included in the responses that he signed. Fenwick Dep., 54:17-55:5:

When Plaintiff Wagner was asked if he had ever seen the Powerpoint presentation also referenced in his interrogatory responses, he responded with a question: "[w]hat is a Powerpoint presentation?" Wagner Dep., 52:8-16  He then testified that he had never seen any presentation prepared by Defendant Halverson in any computerized, written, or other format.  *Id*., at 52:8-53:5.

Incredibly, Mr. Wagner's interrogatory responses stated that the very same Powerpoint presentation was available on the Internet (as did the responses of all of the Plaintiffs).  Mr. Wagner testified, however, that: (1) he has not owned a computer with access to the internet since 2006; (2) he has not gone elsewhere to access the internet; and (3) he has not accessed the internet for approximately four years.  Wagner Dep., 53:13-56:6.

All of the Plaintiffs refer in their interrogatory responses to documents identified as the "Maids Report" and the "Hurt Report."  Responses to Interrogatory 11.  Putting aside the fact that Plaintiffs failed to identify or provide copies of the Reports in their initial disclosures, at least Mr. Wagner made clear that he had no first-hand knowledge of the Reports or their contents.  Wagner Dep., 57:7-60:9.

With regard Sidney Alplaugh, the sole plaintiff who did not sign a verification at the outset of his deposition, he likewise confirmed that the information contained in his interrogatory responses was supplied by his lawyers rather than him.  Deposition of Sidney Alplaugh, July 27, 2010 ("Alplaugh Dep."), 66:13-77:14.  He ultimately declined to sign his interrogatory responses after agreeing that he could not attest to their truth.  *Id*., at 72:19-74:3.  Plaintiffs' counsel has since agreed that Mr. Alplaugh's claims will be discontinued, and a Stipulation of Discontinuance supposedly is forthcoming.

There is also a significant question as to whether Plaintiffs' counsel provided complete interrogatory responses.  For instance, Interrogatory 20 to Plaintiff Michael Wagner requested that he identify, among other things, "each and every lawsuit or legal proceeding, irrespective of date, and whether civil or criminal, in which you or any member of your immediate family have been parties. . . ."  In response, Plaintiff Wagner identified a single workers compensation claim that was settled in 2007.  Wagner Response to Interrogatory 20.  At deposition, however, Mr. Wagner testified about multiple arrests and criminal convictions.  Wagner Dep., 13:7-22:16.  Mr., Wagner also referred to divorce proceedings.  While divorce proceedings normally would not seem at first glance to be of significance, Mr. Wagner volunteered during his deposition that, while in the midst of the divorce proceedings, he arranged through a straw-man transaction in which "no money exchanged hands" to convey the title of his motorcycle to his sister, so that "his wife would not take it."  Wagner Dep., 25:24-26:25.

The fact that most of the Plaintiffs' interrogatory responses merely refer Defendants to documents produced either as part of their Defendants' initial disclosures, or during discovery in this action, also begs the question as to whether the allegations in the Complaint had a basis in fact when the Complaint was filed, or whether Plaintiffs' counsel instead commenced this action and prepared interrogatory responses that were intended to further their own interests, and the political agenda of the anti-motorcycle helmet lobbying group known as ABATE, which is the acronym for "American Brotherhood Against Totalitarian Enactments" or "American Bikers Aimed Towards Education" depending on whom one asks.  *See* Wagner Dep. 69:14-70:2; Ingersol Dep., 10:13-16. 8:25-9:24; Fenwick Dep., 20:3-21:7; Alplaugh Dep., 49:6-25, 52:15-25.  At the Deposition of Mr. Alplaugh, I

Hon. David R. Homer  August 27, 2010
United States Magistrate Judge  Page 3 of 3

expressly requested that Plaintiff's counsel produce all its correspondence with ABATE, which should have been identified or produced as part of Plaintiffs' initial disclosures. Alplaugh Dep. 54:6-55:6. To date, Plaintiff have not responded to my request.

      I have attempted to confer in good faith with Plaintiffs' counsel about the improper interrogatory responses. Specifically, I have asked Plaintiffs' counsel to propose means by which the prejudice to Defendants occasioned by Plaintiffs' failures could be alleviated. Copies of my e-mail correspondence are attached.

      Defendants respectfully submit that the failure of Plaintiffs' to provide proper interrogatory responses should be grounds for sanctions pursuant to Fed. R. Civ. P. 37(d). In particular, Defendants believe that they should be entitled to an Order striking the class allegations in the Complaint and precluding Plaintiffs from offering further testimony or sworn statements in support of their claims. Fed. R. Civ. P. 37(b)(2)(B) and (C).

      Despite the failure of Plaintiffs' counsel to serve deposition notices in this action, as required by Fed. R. Civ. P. 30(b)(1), Defendants have agreed to produce Lt. Halverson for deposition on September 2, 2010, and Lt. Larkin and Major Sprague on September 3, 2010. Defendants respectfully request that, if the Court is able, a conference be schedule earlier that same week, before those depositions proceed.

      Respectfully submitted,

      *s/ Douglas J. Goglia*
      Douglas J. Goglia
      Assistant Attorney General
      Bar Roll No. 302406

**Attachments**

cc.:    Mitchell L. Proner
        Proner, Proner Law Firm
        60 East 42nd Street
        New York, NY  10165
        mproner@prolaw1.com