A. STANLEY PRONER (NY, FL)
MITCHELL PRONER (NY, CT, PA)

TOBI SALOTTOLO (NY)
EDWARD LEMMO (NY)
JENNIFER L. BAILINE (NY)
MATTHEW HAICKEN (NY)



PRONER & PRONER

ATTORNEYS AT LAW
1 800 PRO-LAW1
(1 800 776 - 5291)

60 EAST 42ND STREET
SUITE 1448
NEW YORK, NY 10165
TEL: 212.986.3030
FAX: 212.953.2079
WWW.PROLAW1.COM

BETHEL, CT
NEW YORK, NY
ALBANY, NY
BUFFALO, NY
ROCHESTER, NY
SYRACUSE, NY

August 30, 2010

Hon. David R. Homer
United States Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, New York   12207

Re: Wagner v. County of Schenectady, et. al.
    09-cv-00652 (GLS) (DRH)

Dear Judge Homer:

I am writing in response to the letter of Douglas J. Goglia dated August 27, 2010 and in anticipation of the telephone conference which is scheduled for tomorrow at 11:00 A.M.

I would like to point out at the outset that the "improper interrogatory responses" to which Mr. Goglia refers in his letter all were made in response to his demands that the plaintiffs "identify the documents" which would support their claims that the motorcycle only road blocks which are the subject of this lawsuit are unconstitutional. Nowhere in his letter does Mr. Goglia even attempt to claim that the plaintiffs interrogatory responses with respect to the documents contained anything that was untrue or that the substance of the documents which they referenced was in any way misrepresented. Nor does Mr. Goglia claim that the plaintiffs' testimony with regard to what happened at the roadblock was at odds with the allegations contained in the complaint. Instead, he is objecting to the fact that plaintiffs testified that they were unfamiliar with some of the documents (i.e. the New York State Police's power point presentation on motorcycle stops and their Guidelines for Motorcycle Stops) which the interrogatories stated they believed would support their claims regarding the manner in which the stops were conducted. By his own admission, "most of the documents merely refer Defendants to documents produced either as part of their initial disclosures, or during discovery" and as the plaintiffs' attorneys we advised them which documents we intended to use to establish that the stops, as conducted, were unconstitutional and included those documents in their responses.



PRONER & PRONER

Re: Hon. David R. Homer..................................................................August 30, 2010
    United States Magistrate Judge                                        Page 2

The documents which have been exchanged by the State and which were referenced in the interrogatories unequivocally establish, *inter alia,* that the motorcycle only enforcement checkpoint were scheduled contemporaneously with events which are know to attract to motorcyclists; that the officers working the roadblocks were advised that "discretion is key" and that some vehicles would have to be waved through while others would be detained in fenced in areas where they would undergo detailed inspections of their motorcycles and equipment. They also established that the New York State Police assigned member of their Specials Investigation Units and Gang Units to work at these checkpoints. The plaintiffs made it clear when they were deposed that they felt their rights had been violated and the documents which they referenced in their responses were the ones that their counsel had advised them would support their claims.

Mr. Goglia is well aware that Mr. Alpaugh refused to verify his interrogatories not because they contained any factual inaccuracies as to what transpired on the date of the accident but rather because Mr. Goglia led him to believe that it would be improper for him to do so if he had not personally reviewed the documents which the State had disclosed that were referenced in his response. He is also well aware that Mr. Fenwick became confused because the manner of the questioning led him to believe that the interrogatories stated that he was present at the Port Dover Checkpoint, which they did not. I can assure the Court that the interrogatories which were in front of Mr. Fenwick at the deposition were the same ones that were sent to his house and the same ones that he had discussed with my office over the phone. I would also like to point out that under questioning by Mr. Goglia the plaintiffs repeatedly testified that they had reviewed their interrogatories and had numerous conversations with their attorneys regarding same.

As for Mr. Goglia's statement that we have refused to furnish him copies of the plaintiffs' correspondence with Abate, we certainly have no objection to providing same. It should be noted, however, that Mr. Goglia did not even mention these letters in the e-mails which he attached to his correspondence. It should also be noted that Mr. Goglia neglected to include the portions of the e-mail correspondence in which my associate repeatedly advised him that it was unclear to her how he had been prejudiced by the "improper responses" to the interrogatories and requested that he specify what the prejudice was. Copies of those e-mails are annexed hereto.

As of this writing, Mr. Goglia has persisted in his refusal to specify how he has been prejudiced and it is respectfully submitted that his request for the harsh sanctions of striking the class



Re: Hon. David R. Homer..................................................................August 30, 2010
   United States Magistrate Judge                                           Page 3

allegations and precluding the plaintiffs from offering further testimony or sworn statements in support of their claims is unwarranted.

Very truly yours,

PRONER & PRONER

By: *s/Mitchell Proner*
   Mitchell Proner

cc: Douglas J. Goglia

# Tobi Salottolo

**To:** Tobi Salottolo
**Subject:** RE: RE: Wagner v. Schenectady

-----Original Message-----
From: Tobi Salottolo
Sent: Friday, August 27, 2010 5:14 PM
To: 'Douglas Goglia'; Mitchell Proner
Cc: David Roberts
Subject: RE: RE: Wagner v. Schenectady

Dear Mr. Goglia,

As I stated in my e-mail of August 24, 2010 it is unclear to me how you have been prejudiced by Mr. Alpaugh's refusal to verify his interrogatories.  If I don't understand what the prejudice us, I certainly cannot suggest how to ameliorate it. The manner in which the New York State Police conducted the check points is undisputed and the documents which were referenced in the responses to those questions which called for legal conclusions that Mr. Alpaugh and some of the other plaintiffs claimed to be unfamiliar with were all State documents that were provided by you.  Perhaps, rather than assisting the witnesses in answering the interrogatories which required them to set forth the legal basis for their constitutional claims we should have directed them not to answer the questions on the ground that they called for legal conclusions but I certainly don't see how you that would have benefitted the defendants.  That having been said, I would appreciate it if you would specify how you believe the defendants have been prejudiced and perhaps then I can adequately address your concerns.

With regard to depositions of the three defendants, every attorney involved in this action can attest to the fact that we had numerous scheduling discussions in which you repeatedly agreed to produce these witnesses. At no point in any of those discussions did you ever indicate that a formal notice would be necessary. Nor did you make any mention of the absence of a formal notice when you requested an extension of the discovery deadline from Magistrate Judge Homer.  Instead, you indicated to him that you intended to produce the witnesses and I doubt that he will appreciate your trying to avoid your obligation to do so now. Nevertheless, I am transmitting a formal notice herewith.  Federal Rule 30(b) requires only that "reasonable notice" be given, and inasmuch as you assured Mr. Proner at the beginning of this month that you would produce the witnesses on the dates set forth therein, the notice is certainly reasonable.

As for your reference to 18 U.S.C. §1622, it is as unwarranted and unprofessional as the last sentence of your e-mail of August 25, 2010, neither of which I intend to  dignify by commenting on them further. While reasonable people might disagree as to whether the checkpoints are constitutional, your repeated attempts to equate them with sobriety and seat belt check points is incomprehensible to me.  Now that I have been afforded an opportunity to read all of the plaintiffs' transcripts and the NHSTA recommendations which you finally turned over yesterday, I am more convinced than ever that the degree to which targeting motorcycle events and then setting up road blocks which force motorcyclists attempting to attend those events to leave the roadway and be sequestered in a fenced in area for 30 to 60 minutes while police inspect their equipment and vehicles for safety violations "interferes with individual liberty" far more than it "advances the public interest", thereby rendering the stops unconstitutional.

Mr. Proner will be back in the country on Monday and will call you then.

Regards,

Tobi Salottolo


PRONER & PRONER
Attorneys At Law
60 E. 42nd Street
New York, New York   10165
212-986-3030    - Phone
212-953-2079    - Fax


-----Original Message-----
From: Douglas Goglia [mailto:Douglas.Goglia@ag.ny.gov]
Sent: Thursday, August 26, 2010 1:17 PM
To: Mitchell Proner
Cc: David Roberts; Tobi Salottolo
Subject: Fwd: RE: Wagner v. Schenectady

Dear Mr. Proner:

I am forwarding herewith NHSTA Assessment reports that were requested by your associate, Ms. Salottolo.  This should complete at least the paper discovery in this matter.  As I informed Ms. Salottolo yesterday, Commissioner Swarts will not be produced for deposition, and we will need to discuss the whether the depositions of the NYSP defendants are to proceed given your firm's failure to serve proper deposition notices as required by Fed. R. Civ. P. 30(b)(1).

More importantly, your associate has failed to address my demand that your office provide a written proposal suggesting means to ameliorate the prejudice caused to the defendants  by your firms failure to prepare interrogatory responses that the plaintiffs could properly verify  Apart from being in direct contravention of Fed. R. Civ. P. 33(b),  three of your clients appear to have perjured themselves by signing under oath the verifications prepared by your office, and  Mr. Alplaugh, after reviewing the interrogatory responses prepared for him, refused to sign after conceding that he could not attest to the veracity of his information in the responses, that came from his attorneys.   I would
suggest that your associate and you both  review 18 U.S.C. § 1622.  In any event, the conduct of your office has been completely unacceptable, and I will be contacting the Court shortly to request appropriate sanctions pursuant to Fed. R. Civ. P. 37(d) .  The sanctions I intend to seek include, among other things, an Order pursuant to 37(b)(2) either dismissing this action or precluding you from offering evidence in
support of the claims raised in this action.  As a consequence, the
question of the NYSP depositions may be academic.  In any event, we can discuss those deposition both  when we speak, and at the conference that I will be requesting with the magistrate judge.

Regards.

Douglas J. Goglia
Assistant Attorney General
Office of the Attorney General
The Capitol
Albany, New York   12224

2

```
tel:  (518) 474-6800
fax:  (518) 473-1572
douglas.goglia@ag.ny.gov
```

The information contained in this transmission may contain privileged and confidential
information.  It is intended only for the use of the
person(s) named above. If you are not the intended recipient, you are hereby notified that
any review, dissemination, distribution or duplication of this communication is strictly
prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail
and destroy all copies of the original message.

# Tobi Salottolo

| | |
|---|---|
| From: | Tobi Salottolo |
| Sent: | Tuesday, August 24, 2010 4:44 PM |
| To: | 'Douglas Goglia' |
| Subject: | RE: Wagner v. Schenectady |

Mr. Goglia -

Are you referring to that portion of Justice Rhenquist's dissent in which he states that in the case of a road block "the constitutionality of a seizure turns upon 'a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with the individual liberty'"?  If so, then I am sure you will agree that NHTSA recommendations for improving motorcycle safety  which were made at the Governors' Traffic Safety Committee's request are relevant to a determination as to the degree to which the seizure which is at issue in this case can be deemed to have advanced the public interest in motorcycle safety.  Should you still disagree,  consider this e-mail as Mr. Proner's good faith effort to resolve the matter.

As for the statistics you reference, it is certainly  not surprising that motorcycle fatalities decreased the year after the check points were instituted since they decreased the year before the checkpoints were instituted as well.  In case you have forgotten, the New York State Highway Safety Strategic Plan which was included with the plaintiff's initial exchanges indicated that motorcycle fatalities were already on the decline when the checkpoints were instituted and had actually decreased from 190 in 2006 to 164 in 2007.

Unfortunately the highlighting on the GTSC news release appeared as a redaction on my copy and as result the sections which you quote in your e-mail were illegible.  While I appreciate your providing the link to the press release, I have no doubt that the your e-mail accurately reflects its content.  I cannot help but note, however, that the checkpoints do not even attempt to the issue of driver distraction which the press release makes clear is one of the major causes of motorcycle accidents.

With regard to the issue of " verifiable interrogatories", I assume that you are referring to Mr. Alpaugh's failure to sign his verification. Although it remains unclear as to how you have suffered any real prejudice given the fact that the nature and manner of operation of the checkpoints is undisputed, Mr. Proner remains willing to stipulate to discontinue Mr. Alpaugh's claims against the State of New York.  If this does not adequately address your concerns, you are certainly free to request a conference with Magistrate Homer but I would ask that we schedule it for the beginning of next week as Mr. Proner will be out of the country for the rest of the week.  I would also ask that you furnish me with proposed date for Mr. Swartz' deposition and the NHTSA recommendations by the end of the week.  Please be advised that unless we are in receipt of the NHTSA recommendations by this Friday, Mr. Proner will be contacting to Court on Monday to request a conference with Magistrate Homer, unless of course you have had already done so yourself by that time.

Tobi R. Salottolo
PRONER & PRONER
60 East 42nd Street
New York, New York  10165
212-986-3030
212-953-2079 (facsimile)

-----Original Message-----
From: Douglas Goglia [mailto:Douglas.Goglia@ag.ny.gov]

1

Sent: Monday, August 23, 2010 7:53 PM
To: Tobi Salottolo
Cc: David Roberts
Subject: RE: Wagner v. Schenectady

Ms. Salottollo

I've read the cases, and am quite comfortable with the relevant law.  You might want to look more closely at the entirety of the decision you cite, and Justice Rehnquist's dissent.  The issue here is not whether the checkpoints at issue were effective in addressing motorcycle safety issues.  Rather, it is whether the state police had any valid reason for conducting the checkpoints.  Given the documents produced by the defendants to date, any suggestion that the NYSP were without valid reason for conducting motorcycle safety checkpoints would be frivolous.

Regarding the documents  you claim were not produced, the press release bearing production number NYSP 708 was highlighted, and not redacted. My recollection is that multiple copies were produced from different files.  In any event, and to the extent I am mistaken, the first "redacted" portion of the document read:

"Too many motorcycle accidents are caused by distracted drivers who turn in front of motorcycles.  This public safety television commercial emphasizes the need for motorists to be mindful of motorcyclists traveling on the roadways this summer," Commissioner Naples said. "By practicing smart highway safety behavior we will achieve greater levels of safety for all of New York's motoring public."

The second highlighted portion reads:

According to the most recent statistics available, nearly 4,500 motorcycle accidents occurred in New York State in 2004 with more than 150 people killed as a result of a motorcycle crash. Driver inattention and distraction was specifically listed in approximately 13 percent of all motorcycle crashes.

You need not take my word for it -- the release is publicly available at: http://www.nysgtsc.state.ny.us/press/pr-0060806.htm .

While there, you may also want to look at this one:  http://www.safeny.com/press/pr-070610.htm.

I particularly like the part that reads:

"preliminary crash data from 2009 indicates a more than six percent decrease in overall traffic fatalities, a more than seventeen percent decrease in motorcycle fatalities and a more than twenty-nine percent decrease in bicycle fatalities. . . .  Additionally, data from the DMV shows that in 2009 motorcycle fatalities went from 188 to 155 . . . ."  (emphasis added).

Indeed, by your logic, it would seem that the motorcycle safety checkpoints in fact were effective!

Regarding recommendations which were made in January 2008 by the Motorcycle Safety Program Assessment team from NHTSA , I fail to see how they are material to the claims or defenses that may be raised in this action.

With respect to a conference with Magistrate Judge Homer, I think it is a very good idea, as we then can  discuss plaintiffs' failure to provide verifiable interrogatory responses and the means by which any resulting prejudice to the defendants can be alleviated.  In fact,

2

should I not receive a written proposal from you by the close of business tomorrow, in which you suggest means to ameliorate any prejudice caused to the defendants, I will be requesting a conference with the Magistrate Judge in anticipation moving for an appropriate sanction pursuant to Fed. R. Civ. P. 37(d).  Please consider this e-mail my good faith effort resolve this matter, as required by Local Rule 7.1(d).

In the meanwhile, I will confer with Mr. Swarts to determine whether he can be made available before the discovery cutoff.

Regards.



tsalottolo@prolaw1.com> 8/23/2010 4:32 PM >>> Doug - With all due respect, perhaps you are the one who should take a look at the relevant case law. The constitutionality of checkpoints like the one at issue depends on a balancing of the competing interests at stake, the effectiveness of the program and the subjective intentions that prompted it. Indianapolis v. Edmond, 531 U.S. 32, 121 S. Ct. 447
(2000).  It is plaintiff's contention that the records which you have
produced to date indicate, among other things, that the checkpoints do not effectively address the major causes of motorcycle accidents and that they were prompted not to promote motorcycle safety but to harass and intimidate motorcyclists in retaliation for the death of Trooper Craig Todeschini.  Because the effectiveness of the checkpoints will play a role in determining their constitutionality, the testimony of Mr.
Swartz is indeed relevant.  Also relevant, are the recommendations which were made at the request of his committee in January of 2008 by the Motorcycle Safety Program Assessment team from NHTSA and the unredacted copy of the GTSC news release dated June 8, 2006 (NYSP 708), both of which you have yet to provide.

In view of the foregoing I would still like to schedule the deposition of Mr. Swartz and would appreciate it if you would let me know by the end of the week if it will be necessary for us to seek judicial intervention in that regard and in order to obtain copies of the NHTSA recommendations and an unredacted copy of the news release.

Tobi

Tobi R. Salottolo
PRONER & PRONER
60 East 42nd Street
New York, New York  10165
212-986-3030
212-953-2079 (facsimile)

-----Original Message-----
From: Douglas Goglia [mailto:Douglas.Goglia@ag.ny.gov]
Sent: Monday, August 23, 2010 10:15 AM
To: Tobi Salottolo
Cc: David Roberts
Subject: Re: Wagner v. Schenectady

Tobi:

Why don't you research and read the relevant law regarding random traffic stops and read the deposition testimony of your clients and then get back to me if you still want further depositions.  Your clients virtually admitted that there was probable cause to stop each and every one them, and in any event, the stops, even as described by your clients, fully comported with the Fourth Amendment to the United States Constitution and controlling Supreme

3

Court precedent.  Interestingly, even your clients considered laughable or "funny" the claim that motorcyclists were discriminated against vis a vis drivers of automobiles.

With regard to Swartz, he wasn't at the stops, and hence, had no personal involvement in the purported violations. (Personal involvement is required to assert a 1983 violation).

If you want more depositions, it's your dime.  But you should remain mindful of the fact that defendants anticipate that they eventually will move for, among other things, attorneys' fees under 28 USC 1927.

My strong  sense is that a Swarts deposition will be useless and wasteful.  Defendants already have produced  reports and statistics regarding motorcycle safety, and a Court can take judicial notice of the fact that motorcycle accidents result in fatalities, and that DOT helmet standard were adopted to reduce the frequency of dehabilitating head injuries.  Do you really need depositions to get testimony to this effect?

You should take the deposition of Halverson, and then decide if you want to waste more money on further depositions.  My sense is that once the Halverson deposition has been completed, we will be prepared to have this matter decided on the law, and we should consider a briefing schedule that we can propose to the Court for our motion for summary judgment rather than waste more time an money on depositions.

Just let me know your pleasure.


Douglas J. Goglia
Assistant Attorney General
Office of the Attorney General
The Capitol
Albany, New York  12224
tel:  (518) 474-6800
fax:  (518) 473-1572
douglas.goglia@ag.ny.gov

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the
person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.



Douglas J. Goglia
Assistant Attorney General
Office of the Attorney General
The Capitol
Albany, New York  12224
tel:  (518) 474-6800
fax:  (518) 473-1572
douglas.goglia@ag.ny.gov

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution

or duplication of this communication is strictly prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.


>>> Tobi Salottolo <TSalottolo@prolaw1.com> 8/17/2010 4:28 PM >>>
Doug - I've discussed your recent e-mails with Mitchell who is out of country and have received the ok to discontinue Alpaugh's claim and will forward the additional stipulation. With regard to the other issues we would like to depose Swartz ( he's the head of the Governor's traffic safety commission and I think we may be able to get good testimony from him re the lack of any evidence that these stops promote safety) before deciding whether or not to discontinue as to him.  Do you think we can fit him on either the 2nd or 3rd. We still intend to seek the certify
class if we prevail on the summary judgment motions.

-----Original Message-----



PRONER & PRONER

Attorneys At Law

60 E. 42nd Street

New York, New York  10165

212-986-3030    - Phone

212-953-2079    - Fax

5